## McGARRY v. LENTZ et al.

(District Court, S. D. Ohio, E. D. November 28, 1925.)

No. 333.

1. **Courts** ⊕⟹424—**Within bounds of its jurisdiction, federal court has exclusive concurrent and general jurisdiction.**

Within limits of its jurisdiction, federal District Court has exclusive, concurrent, and general jurisdiction, and in equity is open to all suitors invoking its general equity powers.

2. **Courts** ⊕⟹259—**State statute prohibiting certain proceedings against fraternal associations, except by Attorney General, barred such proceedings in federal court.**

Gen. Code Ohio, § 9487, prohibiting injunction, dissolution, or receivership proceedings against fraternal associations, except by Attorney General, in effect when nonresidents became members of fraternal insurance company, became part of their contract, and barred suit in federal court to enjoin company from erecting buildings, for cancellation of building contracts, and accounting.

3. **Courts** ⊕⟹308—**Representation of citizens of same state as defendant does not defeat jurisdiction over class sued.**

Jurisdiction of federal court of suit against resident defendant by nonresident members of class, for benefit of all members of class, is not defeated by representation by nonresident plaintiff of members of class who are residents of same state as defendant.

In Equity. Suit by Frank McGarry against John J. Lentz and others, wherein James McGarry filed intervening petition. Motions to strike defenses in answer overruled, and bill and intervening bill dismissed.

Vorys, Sater, Seymour & Pease and Smith Bennett, all of Columbus, Ohio, for plaintiff.

Williams, Sinks & Williams and B. W. Gearheart, all of Columbus, Ohio, for defendants.

HOUGH, District Judge. The complainant filed his bill of complaint against American Insurance Union and the members of its board of directors or trustees, designated in its constitution and by-laws as "the National

Board of Directors," praying for an injunction, cancellation of building contracts, and an accounting.

James McGarry filed an intervening petition against the same defendants asking similar relief, and in addition thereto the appointment of a receiver for American Insurance Union.

The defendant American Insurance Union is a fraternal insurance company, organized and having its corporate existence under and by virtue of the laws of the state of Ohio.

The complainant and intervener are citizens of the state of Illinois, and make averments in their respective pleadings to base their right to sue upon the ground of diversity of citizenship, each being a policy or certificate holder in the defendant insurance company.

The complainant in his bill, and the intervener in his intervening bill, each sue in his own name and on behalf of all those similarly situated as policy or certificate holders.

It is averred: That the corporation is without capital stock, and was organized and is carried on solely for the mutual benefit of its members and their beneficiaries, and not for profit, and that it has been in business ever since the 21st day of September, 1894, engaged in and carrying on the business of the fraternal benefit society, with its office and the seat of its business in the city of Columbus, in the Southern district of Ohio. That it operates under and has adopted a constitution and by-laws providing, among other things, for the creation of funds derived from assessment of its members. It is also provided that its funds may be invested by "purchasing and holding real estate such as is requisite for immediate accommodation in the transaction of its business," and for such other purposes therein provided. Provision is also made for the creation of a certain board, known as "the National Board of Directors," to which is consigned the control and management of the business affairs, property, and funds of the society as follows: "Said boards shall also invest the funds of the society as it may deem for the best interests of the society and consistent with the statutes governing the investment of such funds." That a fund of something over $2,500,000 has been accumulated, now constituting a trust fund for the benefit and security of policy or certificate holders. Against this fund there is chargeable more than $1,500,000 as a valuation reserve on standing policies and certificates of insurance. And that other liabilities are chargeable against

the fund, making an aggregate of more than $2,000,000 so chargeable.

It is further averred that the defendant insurance corporation, through its national board of directors, have acquired two 8 story office buildings located upon East Broad street in the city of Columbus, and has further purchased premises on West Broad street in said city, a tract of ground 187½ feet square, known as "Platt Quarter Square," and upon said tract have begun the construction and erection of a 30-story building, substantial space in which has been set aside and let for a hotel and theater purposes; the latter project to cost exceeding $5,000,000.

It is averred that the diversion of the insurance funds and the hypothecating of the credit of the insurance association to these building projects is contrary to the regulatory laws of the state of Ohio, the constitution and by-laws, rules, and regulations of the insurance association, and is in violation of the rights of the complaining parties as policy and certificate holders.

To the complaint and intervening complaint, joint answers of the defendants have been filed, and to these answers the plaintiff and intervener, respectively, filed their motions to strike affirmative matter.

Among other things set out in the answers and moved to be stricken therefrom, is the following:

Defendants further state "that section of the General Code of Ohio, which is a part of the general legislation relating to fraternal benefit societies in the state of Ohio, provides that no application for injunction against, or proceedings for the dissolution of, or the appointment of a receiver for, any such domestic society or branch thereof, shall be entertained by any court in this state, unless the same is made by the Attorney General. Said section was in full force and effect at the time plaintiff (and intervener) became a member of the defendant American Insurance Union, and has been in full force and effect continuously and at all times since."

The above-quoted matter contains the exact language of section 9487 of the General Code of Ohio, which is one of the sections of an act relating to fraternal associations.

Counsel representing the two nonresidents, seeking equity in this court, contend that the case is brought under the broad equity jurisdiction of the court and under the equity rules promulgated by the Supreme Court of the United States, which have the force and

effect of law in the premises, and that the allegations in respect to diversity of citizenship fortifies their position and procures to them the right to invoke that jurisdiction.

The defendants, on the other hand, claim that the statute of the state furnishes a complete and exclusive remedy, effectually barring the right to the relief asked and the remedy sought, that this is a class or representative suit, and that the remedy is invoked, not in the nature of an exclusive personal right, but personal only in the sense of a right possessed by all of a class of persons similarly situated.

The latter position is conceded by opposing counsel, and must be admitted and conceded under the averments of the bill and the intervening bill.

[1] Although the jurisdiction of the federal District Court is limited within the bounds of those limits it exercises exclusive, concurrent, and a general jurisdiction. And it may be stated with assurance, that in equity it exercises a general jurisdiction, and that the court is open alike to all suitors invoking its general equity powers.

[2] The paramount question, and perhaps the sole vital question before the court at this time, is how, if at all, this act of the Legislature of the state of Ohio affects the power of this court in the exercise of its general equity functions.

While the equity doors are open to all suitors, without discrimination, such declaratory statement and rule is like almost every other legal rule or principle subject to at least seeming exceptions. Declination to permit remedial relief on considerations of comity is an illustration of an exception. Disability of the parties to sue is another example. Mental defects, minority status, and, under the common law heretofore, disabilities of women in coverture relationship are illustrative examples of exceptions to the rule. Likewise, one may place himself under the disability by his own act. His own contract may operate to disqualify him from receiving advantages which would otherwise be his but for his act. A contractual relationship may be made to appear challenging and barring what otherwise would be a clear right to a remedy.

The complainants, meaning the complainant in bill and the complainant in the intervening bill, are certificate holders or stockholders in this nonprofit corporation. The corporation is a creature of the Ohio law; its affairs are regulated and its powers limited by the laws of this state. Its by-laws and regulations are defined by, and its method and policy of operation, management, and character of its business is controlled by, and its charter powers limited by, the regulatory provisions of the state of Ohio.

Complainants became certificate holders in the corporation under such conditions. By so doing, the regulatory statutes and rules and regulations of the corporation put into being under such statutes, and the charter rights and limitations are all read into their certificates of stock, and, in so far as they are restricted by this relationship, just so far do they find themselves under legal disability to pursue their remedy in this court.

Section 9487, General Code, provides that:

"No application for injunction against or proceedings for the dissolution of or the appointment of a receiver for any such domestic society or branch thereof shall be entertained by any court in this state unless the same is made by the Attorney General."

In the case of Cummings v. Supreme Council of Royal Arcanum (D. C.) 247 F. 992, the District Judge in the opinion, beginning on page 995, says:

"It has been the general doctrine of the courts that the Legislature of a state has power to provide the method by which the affairs of such societies may be conducted and by which they may finally be closed; * * * it cannot be said, I think, that such legislation is unfavorable to the interests of the parties like the plaintiffs in this suit. They are thereby protected from frivolous suits intended to interfere with the proper business of the defendant, or to wreck it while it is pursuing its legitimate business in a proper manner. For many years the courts have recognized the principle that a corporation derives its power from the laws of the state creating it; that such state has the right to determine the powers relating to the government of the corporation and the method of administering and closing it." Head v. Providence Ins. Co., 2 Cranch, 127, 167, 2 L. Ed. 229; Barnitz v. Beverly, 163 U. S. 118, 16 S. Ct. 1042, 41 L. Ed. 93.

"Under the decisions of the federal courts, I think it clear that the laws of the state, in force at the time when plaintiffs made their contract, formed part of the contract, and are obligatory on all courts assuming to act in the premises."

The District Court of the Eastern District of Michigan (Knappen and Denison,

Circuit Judges, and Sessions, District Judge, sitting) in the case of Winthrop v. Fellows, 230 F. 702, announced the same proposition of law in different language, upon the question of contractual disability to sue, where it is said:

"A corporation organized under the laws of a state, its stockholders, and all others claiming under it by right of representation, are estopped to attack the validity of a provision of the act under which it was incorporated, and which becomes part of its charter."

This same question of estoppel of the disability which surrounds a party by reason of entering into a relationship contractual in nature, and thus bringing himself within regulatory provisions of a state law, is further dealt with in the case of Grand Rapids & Indiana Railway Co. v. Osborn, 193 U. S. 17, 24 S. Ct. 310, 48 L. Ed. 598. Furthermore, we find section 9486, General Code of Ohio, where the superintendent of insurance, when that official is satisfied that any domestic society has failed to comply with any of the provisions of the act, or is exceeding its powers, or is not carrying out its contracts in good faith, or is transacting business fraudulently, may present the facts to the Attorney General, who has the authority and power to apply to a court of competent jurisdiction for the purpose of enjoining the society from carrying on any further business, and for the appointment of a receiver.

Whether this provision restricts or limits the rights of certificate holders from seeking a remedy in a court of equity, or whether the provision should be construed to be exclusive, or only to furnish a cumulative remedy, need not be decided in this opinion, because the language of section 9487, General Code, is comprehensive, clear, and free from ambiguity. This section does furnish an exclusive remedy, as against the class of persons for whom this suit is sponsored, and an exclusive remedy in so far as the complainants as representatives of this class are concerned. Therefore the motions to strike from the answers the defenses that plead the substance of this section of the statute must be overruled. These defenses are further held to be complete defenses, and as such relate back and challenge the bill and the intervening bill.

The complainants, by reason of their disability, have no right to injunctive relief or to the appointment of a receiver.

The prayer for the cancellation of contracts and for an accounting are ancillary and subordinate to, and dependent upon, the right to injunctive relief.

[3] One other question raised, or at least suggested, was whether or not diversity of citizenship existed. Inasmuch as this is a class suit, and complainants sue as representatives of all those similarly situated, that is, all certificate holders, it is to be presumed that a goodly portion of the class are residents of the state of Ohio. Would this interfere with diversity of citizenship upon which jurisdiction is based? This question is definitely settled and resolved in favor of the jurisdiction by the case of Supreme Tribe of Ben Hur v. Cauble, 255 U. S. 356, 41 S. Ct. 338, 65 L. Ed. 673.

Both the bill and intervening bill of complaint will be dismissed at the cost of complainants.