Walter S. LOWRY, Jr., Appellant,

v.

The INTERNATIONAL BROTHER-
HOOD OF BOILERMAKERS, IRON
SHIPBUILDERS AND HELPERS OF
AMERICA, et al., Appellees.

No. 16935.

United States Court of Appeals
Fifth Circuit.

Sept. 22, 1958.

Albert Sidney Johnston, Jr., J. D. Stennis, Jr., Biloxi, Miss., for appellant.

R. W. Thompson, Jr., Webb M. Mize, Gulfport, Miss., Clifford Langsdale, Kansas City, Mo., for appellees.

Before RIVES, BROWN and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

Federal jurisdiction in this case is based on diversity of citizenship. 28 U.S.C.A. § 1332. The district court was of the opinion that the requisite diversity existed.

The appellant Lowry has filed three actions based on his suspension and expulsion from International Brotherhood of Boilermakers, Iron Shipbuilders and Helpers of America, and its Local Lodge 693 of Pascagoula, Mississippi. The first was filed in the United States District Court for the Southern District of Mississippi on October 28, 1953, and was dismissed by that court on March 13, 1954, for lack of jurisdiction of the Local Lodge as an indispensable party.

That case need concern us no further, for, instead of appealing from the judgment of dismissal, Lowry almost immediately filed a second action in the Chancery Court of Jackson County, Mississippi, against the International Brotherhood and a number of non-resident individual officers. Service of process was effected through attachment and garnishment proceedings against the Local Lodge and two other garnishees. On petition of the International Brotherhood, the case was removed to the District Court for the Southern District of Mississippi on the ground of diversity of citizenship. There are three different sets of party defendants. First, the International Brotherhood was sued as a de jure person and, without further description as to whether or not it was incorporated, was alleged to be "a labor organization, a non-resident of the State of Mississippi, and is domiciled in Kansas City, Kansas"; second, several non-resident individuals who were officers of the union were sued as sufficiently representing all members; and third, Local Lodge 693, Ingalls Shipbuilding Corporation, and the Merchants and Marine Bank of Pascagoula were sued for the alleged purposes of garnishment and attachment, respectively. Lowry's motion to remand was overruled. The district court, however, dismissed the complaint

on June 10, 1954, on the ground that it was barred by the statute of limitations. This Court reversed, not on jurisdictional grounds, but because it held that the Mississippi statute of limitations of six years, Code 1942, § 722 applied instead of the Kansas statute of two years, G.S.1949, 60–306. Lowry v. International Brotherhood, etc., 5 Cir., 1955, 220 F.2d 546.

On July 28, 1954, pending his appeal from the dismissal of his second action, Lowry filed a third action, also in the Chancery Court of Jackson County, Mississippi, against the same defendants. On petition of the International Brotherhood, that action was removed to the same federal court. Lowry's motion to remand for lack of diversity was overruled, the district court finding summarily that the requisite diversity existed. After reversal by this Court of the second action, the second and third actions were consolidated and, following a full trial, judgment was entered for the defendants. From that judgment this appeal is prosecuted.

■■ On June 9, 1958, this Court, ex mero motu, requested briefs from both parties on whether or not diversity of citizenship existed so as to confer federal jurisdiction over the cause. The courts, on their own motion, are under a duty to raise the question of lack of federal jurisdiction at any time that such lack appears, either in the trial or appellate stage. McNutt v. General Motors Acceptance Corp., 1936, 298 U. S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; Schroeder v. Freeland, 8 Cir., 1951, 188 F.2d 517; Murphy v. Hotel & Restaurant Employees & Bartenders International Union, D.C.Mich.1951, 102 F.

Supp. 488; 54 Am.Jur., United States Courts § 138. Furthermore, for federal jurisdiction based on diversity of citizenship, all the parties on one side must, of course, be citizens of different states from all the parties on the other. E. g., Strawbridge v. Curtiss, 1806, 3 Cranch 267, 2 L.Ed. 435; Grant County Deposit Bank v. McCampbell, 6 Cir., 1952, 194 F.2d 469, 31 A.L.R.2d 909; Foster v. Carlin, 4 Cir., 1952, 200 F.2d 943.

■■ The plaintiff-appellant Lowry is a citizen of Mississippi. Assuming arguendo that the Local Lodge 693 is merely a garnishee-defendant and not an indispensable party defendant and that the individual defendants are citizens of other states and are sued as representatives of a class being composed of the union membership, [1] nevertheless, federal jurisdiction does not affirmatively appear, but to the contrary it now affirmatively appears that the International Brotherhood is sued in the capacity of an entity and has a local lodge with many members in Mississippi. While it is true that a labor union being a voluntary association is in some ways similar in structure and operation to a corporation and may be treated as a separate legal entity for the purposes of suing and being sued, [2] and even though the officers of an unincorporated labor union, like the officers of a corporation, have no right to refuse to produce records of the union on the constitutional grounds of the Fourth and Fifth Amendments, [3] and, even though large unincorporated associations are treated similarly to corporations for the purpose of venue, [4] the decisions fully support the textual statement that "unincorpo-

1. These individual defendants were officers of the union and were sued as "having full jurisdiction over all subordinate (or local) and district lodges, and exercising executive and judicial power over the 'International Brotherhood,' with full and complete power to protect the interest of all members thereof, and notice to them of the pendency of this action is sufficient for their appearance for all members."

2. United Mine Workers of America v. Coronado Coal Co., 1922, 259 U.S. 344, 42 S. Ct. 570, 66 L.Ed. 975. See also Rule 17(b), Federal Rules of Civil Procedure, 28 U.S.C.A.

3. United States v. White, 1944, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542.

4. Sperry Products v. Association of American Railroads, 2 Cir., 1942, 132 F.2d 408, 411, 145 A.L.R. 694.

rated associations have never been accorded a status as jural persons for purposes of diversity jurisdiction, nor has there developed a presumption of a single citizenship of the members. This is so even when by the applicable law they have the capacity to sue and be sued in the association name. The citizenship of all the members must be looked to, and not merely that of the officers or managers." Hart and Wechsler, The Federal Courts And The Federal System, 1953, p. 917.[5]

Conceding that unincorporated associations and partnerships are not treated as jural persons for the purpose of diversity, the appellees-defendants contend that, nevertheless, this Court has jurisdiction because the suit was brought and prosecuted as a class action, and that the union in its entity capacity should be disregarded. This brings us to consider the class action in the light of diversity of citizenship for jurisdictional purposes.

The class action device is a traditional creature of equity and, as codified in former Equity Rule 38, was used when the number of people constituting a class were "so numerous as to make it impracticable to bring them all before the court."[6] One kind of the traditional parties to a class action has been large unincorporated associations who, prior to the case of United Mine Workers of America v. Coronado Coal Co., 1922, 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975, could not be sued in federal court unless there was a joining of all members or unless the suit was a class suit.[7] Before the adoption of the Federal Rules of Civil Procedure, the class action device was limited to equity practice, but now, of course, the class action under Rule 23 may be used also for historically law causes of action. A class suit against a large unincorporated labor association is, as Professor Moore states,[8] the perfect example of the true class action under Rule 23(a) (1) in which a judgment is absolutely binding and res judicata as to all members.[9]

■■ Following the decision of United Mine Workers of America v. Coro-

---

5. See also, 3 Moore's Federal Practice, Para. 17.25. For cases, see Thomas v. Board of Trustees, 1904, 195 U.S. 207, 25 S.Ct. 24, 49 L.Ed. 160; Hattenbaugh v. Airline Pilots Ass'n International, 5 Cir., 1951, 189 F.2d 319; Rosendale v. Phillips, 2 Cir., 1937, 87 F.2d 454; Levering & Garrigues Co. v. Morrin, 2 Cir., 1932, 61 F.2d 115; Ex parte Edelstein, 2 Cir., 1929, 30 F.2d 636, certiorari denied Edelstein v. Goddard, 279 U.S. 851, 49 S.Ct. 347, 73 L.Ed. 994; Russell v. Central Labor Union, D.C.Ill.1924, 1 F. 2d 412; Wise v. Brotherhood of Locomotive Firemen and Enginemen, 8 Cir., 1918, 252 F. 961.

6. See Montgomery Ward & Co. v. Langer, 8 Cir., 1948, 168 F.2d 182, 187; System Federation No. 91, etc. v. Reed, 6 Cir., 1950, 180 F.2d 991, 995; 3 Moore's Federal Practice, 2d ed., Para. 23.02. Former Equity Rule 38 reads:
"When the question is one of common or general interest to many persons constituting a class so numerous as to make it impracticable to bring them all before the court, one or more may sue or defend for the whole."

7. Supreme Tribe of Ben-Hur v. Cauble, 1921, 255 U.S. 356, 41 S.Ct. 338, 65 L. Ed. 673; Sperry Products v. Association of American Railroads, 2 Cir., 1942, 132 F.2d 408, 411, 145 A.L.R. 694; Evenson v. Spaulding, 9 Cir., 1907, 150 F. 517, 9 L.R.A.,N.S., 904; McGarry v. Lentz, D.C.Ohio 1925, 9 F.2d 680. See also 3 Moore's Federal Practice, 2d ed., Para. 23.01, 23.08.

8. 3 Moore's Federal Practice, 2d ed., Para. 23.08. Rule 23(a) (1), Federal Rules of Civil Procedure, reads:
"(a) *Representation.* If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is
"(1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it." (28 U.S.C.A.)

9. See Supreme Tribe of Ben-Hur v. Cauble, note 7, supra.

nado Coal Co., supra, Rule 17(b), Federal Rules of Civil Procedure,[10] allows a suit by or against an unincorporated association to be commenced in its name as an entity when the case concerns a substantive right under the Constitution or laws of the United States or when the state allows suit in the common name. Thus, for many purposes alternative measures are provided for suits involving partnerships or unincorporated associations in federal courts. In recent years, not only has the class action suit been a helpful way to obtain in personam jurisdiction over large associations in both state and federal courts, but also it has been used frequently to confer on federal courts jurisdiction on the basis of diversity of citizenship when such diversity would be defeated if the suit could be and were commenced in the entity name.[11] The courts must look only to the citizenship of the named representatives for diversity purposes and a subsequent joinder of parties not having diversity will not defeat jurisdiction.[12] It is well established that the courts will allow the dismissal of the action as to named parties in order to create diversity, as long, of course, as the dismissed parties are not indispensable [13]—it is difficult to conceive of an indispensable representative of a large class.[14] We can detect no policy against a liberal use of Rule 23(a) to create diversity even when Rule 17(b) would or could apply. As stated by Judge Parker, afterward Chief Judge, in Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, 4 Cir., 1945, 148 F.2d 403, 405:

"And there is nothing in rule 17 (b) which limits the right to bring a class suit under rule 23(a) in proper cases. Rule 17(b) relates to capacity to sue or be sued; and it provides that, where a partnership or unincorporated association has no such capacity by the law of the state where the court is held, it may nevertheless sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States. There is nothing in this that limits the right to bring the unincorporated association into court by means of a class suit in accordance with the prior practice; and the right to bring such class suit continues to be of great value when the right to sue the association in its common name is, for any reason, unavailable. Instances where it is not available are cases where jurisdiction based on diversity would be defeated by a suit by

---

10. Rule 17(b), Federal Rules of Civil Procedure, reads:

"(b) *Capacity to Sue or Be Sued.* The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of his domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States, and (2) that the capacity of a receiver appointed by a court of the United States to sue or be sued in a court of the United States is

governed by Title 28, U.S.C., §§ 754 and 959(a)."

11. E. g., System Federation No. 91, etc. v. Reed, 6 Cir., 1950, 180 F.2d 991; Montgomery Ward & Co. v. Langer, 8 Cir., 1948, 168 F.2d 182; Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, 4 Cir., 1945, 148 F.2d 403.

12. See notes 7 and 11, supra.

13. Montgomery Ward & Co. v. Langer, note 11, supra; Carolina Casualty Insurance Co. v. Local No. 612, etc., D.C. Ala.1956, 136 F.Supp. 941; Dollar S.S. Lines v. Merz, 9 Cir., 1934, 68 F.2d 594.

14. In Philadelphia Local 192, etc. v. American Federation of Teachers, D.C.Pa. 1942, 44 F.Supp. 345, where a local union sued the National treating both parties as a class, the court held that naming one officer-representative as to each class was adequate and that diversity existed.

or against the association but not by a suit by or against representatives or where, as here, it is not possible for the plaintiff to serve process on the association within a convenient jurisdiction. See Moore's Federal Practice Vol. 2, p. 2236; Philadelphia Local 192 etc. v. American Federation of Teachers, D.C., 44 F.Supp. 345. The manifest purpose of the provision of rule 17(b) relating to suits against partnerships and unincorporated associations is to add to, not to detract from, the existing facilities for obtaining jurisdiction over them. The language of rule 17(b) relating to suits against partnerships and unincorporated associations is permissive. So also is the language of rule 23(a). Together they provide alternative methods of bringing unincorporated associations into court."

 While alternative methods of suit are provided by Rules 17(b) and 23(a), diversity of citizenship for federal jurisdiction must still exist between all the parties on one side and all the parties on the other. If the asso-

ciation is sued or sues as an entity under Rule 17(b), citizenship is determined by the individual members;[15] if the association is a class party under Rule 23(a), the representatives named must have complete diversity from the other side.[16] If the association in the capacity as an entity is joined with persons fairly representing that association as a class, then no doubt the association itself is a party and citizenship is determined accordingly. In the present case, that was the situation—the defendant union, as an entity, was joined with named non-resident officers as fairly representing the membership. Thus, to determine diversity of citizenship, we must look to all the members of the union as well as to the named representatives of the class. It has even been held, where the unincorporated association was a party in its own name and also as a class and where the state did *not* allow suits against associations as such, that the entity will be disregarded under Rule 17(b) and the case will be treated as a class action.[17] Or, whether or not the state allows suits to be commenced in the entity name, the courts have allowed a dismissal of the entity in order to create diversity in a class action.[18] But

15. See cases in Notes 5 and 6, supra. See also, International Allied Printing Trades Ass'n v. Master Printers Union, D.C. N.J.1940, 34 F.Supp. 178; American Newspaper Guild v. Mackinnon, D.C. Utah 1952, 108 F.Supp. 312.

16. See cases in note 6, supra. See also, Ketcher v. Sheet Metal Workers' International Ass'n, D.C.Ark.1953, 115 F. Supp. 802; Philadelphia Local 192, etc. v. American Federation of Teachers, D.C.Pa.1942, 44 F.Supp. 345; International Allied Printing Trades Ass'n v. Master Printers Union, D.C.N.J.1940, 34 F.Supp. 178; Fitzgerald v. Dillon, D.C. N.Y.1950, 92 F.Supp. 681.

17. This was the situation in Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, 4 Cir., 1945, 148 F.2d 403, and in Sanders v. International Ass'n of Bridge, Structural and Ornamental Iron Workers, D.C.Ky.1954, 120 F.Supp. 390.

18. In Montgomery Ward & Co. v. Langer, 8 Cir., 1948, 168 F.2d 182, 187, the court stated:

"We know of no practical reason why the procedure prescribed by Rule 23(a) (1) should not be as fair and as effective in enabling unincorporated associations to sue or be sued as is the procedure— which prevails in many jurisdictions—of permitting them to sue or defend under their common names. Where such associations have the status of legal entities, the members who act for them in bringing or defending actions are in reality the representatives of the membership as a whole.

"We regard as without merit the contention of the defendants that requisite diversity of citizenship does not exist because, at the time the complaint was filed, the two unions, which had no citizenship, were named as defendants, and Leonard Levy, a Vice-President and Regional Director of the International Union, who is a citizen of Illinois and was not joined as a defendant, must be regarded as an indispensable party. We find nothing in the record upon which to base a conclusion that Leonard Levy's presence as a defendant is essential to

neither occurred here, and appellant-plaintiff still insists upon his suit against the association as such. An unincorporated association may be sued for service of process as a jural person in Mississippi,[19] and the appellant sues defendant union as a jural person, insisting that diversity of citizenship does not exist since the association is composed in part of Mississippi citizens.

The plaintiff-appellant had two alternative methods of suing the defendant-union and he chose to combine them. If we might speculate, we would say that perhaps he used the class action device to effectuate the chancery attachment and garnishment methods against non-residents,[20] and the entity concept to assure the validity of a personal pecuniary judgment against all members (if obtained) and perhaps against the union assets and thus void the possible objection of personal liability for individual class members in tort.[21] Actually, however, the only concern we have with the motives of counsel for plaintiff-appellant is to make certain, as we do, that the unincorporated association itself was joined as a party defendant. This Court has no jurisdiction based on diversity over the unincorporated association as such as a party defendant

enable the District Court to proceed with this case. An action may be dismissed as to defendants who are not indispensable, in order to bring about complete diversity of citizenship."

In International Allied Printing Trades Ass'n v. Master Printers Union, D.C. N.J.1940, 34 F.Supp. 178, the plaintiff-union commenced the action in its own name which was allowed under New Jersey law. This defeated diversity and the court allowed an amendment of the complaint into a class in order to create diversity. In Pascale v. Emery, D.C. Mass.1951, 95 F.Supp. 147, the original suit was commenced against a union in its own name, and, since Massachusetts did not allow a suit against an unincorporated association as such, the plaintiff was allowed amendment to make it a class action by naming one representative of the union.

19. Brotherhood of Railroad Trainmen v. Agnew, 1934, 170 Miss. 604, 155 So. 205; Varnado v. Whitney, 1933, 166 Miss. 663, 147 So. 479.

20. Mississippi Code Ann.1942, §§ 2729-2734.

21. Whether or not a tort judgment secured against all members of a class, instead of against just the named representatives who participated in or consented to the tort, will meet the test of due process has not been adjudicated by the Supreme Court. See the discussion of this by Circuit Judge Johnsen concurring in Montgomery Ward & Co. v. Langer, 8 Cir., 1948, 168 F.2d 182, 189, and by District Judge Ford in Pascale v. Emery, note 18, supra. Since Mississippi allows the class action to be used by and against unincorporated associations in chancery courts (Machine Products Co. v. Prairie Local Lodge No. 1538, Miss.1957, 94 So.2d 344) and since traditional law and equity practice still prevails in Mississippi, it is speculative as to whether or not a tort cause of action could be binding on members not before the court. In the case of Benz v. Compania Naviera Hidalgo, S.A., 9 Cir., 1956, 233 F.2d 62, the court holds that the common law prevented the securing of a tort judgment in a class action as to members not before the court. For an excellent discussion of this subject, see 3 Moore's Federal Practice, 2d ed., Para. 23.11.

Furthermore, the common law concept of tort liability being conferred severally on each of the members of an unincorporated association or partnership has not been changed in the individual states by the case of United Mine Workers of America v. Coronado Coal Co., 1922, 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975, or by Rule 17(b), Federal Rules of Civil Procedure. See Sperry Products v. Association of American Railroads, 2 Cir., 1942, 132 F.2d 408. However, some states which allow suits in the association name may also have abrogated the common law concept of limiting liability to only the members as such, following the Coronado case, supra, and allow recovery as to the association assets. See Benz v. Compania Naviera Hidalgo, S.A., supra. Therefore, it may be that, since Mississippi allows service of process on an unincorporated association in its common name (Brotherhood of Railroad Trainmen v. Agnew, note 19, supra), a judgment thus conferred may perhaps be binding on also the association assets, making it tactically wise for the plaintiff Lowry to sue the Union as such. See Restatement, Judgments § 78, Comment (c).

since it appears that many members of defendant union are citizens of Mississippi, the same as is the plaintiff.

 The appellees urge that this Court is bound to entertain jurisdiction on two other grounds. First, they say that reversal of the prior judgment of dismissal by this Court places in operation the doctrines of the law of the case and res judicata on the question of jurisdiction. It is enough to say that, while this Court understandably overlooked the lack of diversity on the former appeal, its judgment reversing a judgment entered by the district court when it had no jurisdiction cannot breathe validity into the action. In the case of City of Stuart v. Green, 5 Cir., 1937, 91 F.2d 603, 604, 113 A.L.R. 560, this Court speaking through Judge Holmes, stated:

"No question of jurisdiction was raised or decided on the former appeal, but, upon remand of the case to the district court, its jurisdiction was challenged by the city upon the ground that Green was not the original payee but held the notes as assignee of the Osceola Golf Club, a corporation organized under the laws of Florida, which could not have prosecuted the suit in the federal court if no assignment had been made.

"It is contended that the question of jurisdiction was foreclosed by the decision of this court on the former appeal, but, as the question was not raised by any of the parties or decided by the court, we know of no principle in the doctrine of estoppel or the doctrine of the law of the case which relieves us of the duty of considering and determining whether the cause was properly brought in the federal court. The objection is one which cannot be waived, and may be raised by the parties at any time or considered by the court on its own motion. Utah-Nevada Co. v. De Lamar [9 Cir.] 133 F. 113."

Second, appellees state that, since the complaint showed that the named defendants were all non-residents so as to confer jurisdiction by attachment on the Chancery Court of Jackson County, Mississippi, appellant is estopped to challenge jurisdiction. Again, it is enough to say that jurisdiction of a federal district court in diversity cases cannot be conferred by consent or agreement of the parties,[22] and that state statutes or decisional law cannot confer federal diversity jurisdiction.[23]

For the foregoing reasons, the judgment is therefore vacated and the causes remanded to the district court with directions that they be remanded to the Chancery Court of Jackson County, Mississippi, from which they were improperly removed.

Vacated and remanded.

---

**22.** United States v. Griffin, 1937, 303 U.S. 226, 58 S.Ct. 601, 82 L.Ed. 764. See 54 Am.Jur., United States Courts, § 141.

**23.** Stephenson v. Grand Trunk Western R. Co., 7 Cir., 1940, 110 F.2d 401, 132 A.L.R. 455; 54 Am.Jur., United States Courts, § 8.